IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 1, 2011

## JOHN W. FOSTER, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-C-1885    Steve Dozier, Judge**

---

**No. M2010-00422-CCA-R3-PC - Filed June 29, 2011**

---

The petitioner, John W. Foster, Jr., appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his conviction for aggravated robbery and resulting sentence of thirty years to be served at sixty percent before eligible for release. The petitioner contends that he received the ineffective assistance of counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JERRY L. SMITH, and ALAN E. GLENN, JJ., joined.

Ashley Preston, Nashville, Tennessee, for the appellant, John W. Foster, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III; District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

We glean the following relevant facts from this court's opinion in the petitioner's direct appeal: On the night of April 17, 2004, the victim ate dinner with friends at an O'Charley's restaurant. State v. John W. Foster, Jr., No. M2006-02724-CCA-R3-CD, 2008 Tenn. Crim. App. LEXIS 145, at **1-2 (Nashville, Feb. 15, 2008), perm. to appeal denied, (Tenn. 2008). Afterward, the victim was talking with her friends, Jennifer Johnson and Carleen Haley, in the restaurant parking lot. Id. at *2. Johnson was sitting in the driver's seat of her car, and the victim and Haley were standing at Johnson's driver's side window.

Id. A small black car pulled up behind Johnson's car, and a man got out and approached the women. Id. Haley screamed and ran in front of Johnson's car, and the man took the victim's purse. Id. At trial, Johnson testified that she saw the man point "a sliver object" at the victim. Id. Haley testified that she saw the man put "something" to the victim's side and heard him tell the victim, "'Give me your purse or I'll shoot you.'" Id. at *4. She also testified that she told the driver of a nearby SUV to write down the robber's license plate number. Id. at *5. The victim testified that the robber stuck a small silver gun in her side, demanded her purse, and threatened to shoot her. Id. at *6. Although Johnson was only able to give the police a general description of the robber, Haley and the victim saw the robber's face and picked the petitioner's photograph out of a six-photograph array. Id. at **3, 5, 7. Haley and the victim also identified the petitioner in court as the robber. Id. at **5, 7. When the police went to arrest the petitioner, they noticed a black Nissan Altima parked in front of his residence and found him hiding in a bedroom closet. Id. at **8-9. The petitioner's father and Edmond Wells testified that the petitioner was with them at a casino at the time of the robbery. Id. at **9-10. However, Wells said that he could not recall the name or appearance of the casino because he was "'half lit'" at the time. Id. at *9. The jury convicted the petitioner of aggravated robbery, a Class B felony. Id. at *1. After a sentencing hearing, the trial court sentenced him as a Range III, career offender to thirty years in confinement. Id.

On direct appeal to this court, the petitioner argued that the evidence was insufficient to establish his identity as the robber and that the trial court erred by denying his motion for a mistrial when Haley referred to the petitioner's license tag number in violation of a pretrial order. Id. at **12, 17-18. This court affirmed the petitioner's convictions. Id. at *19. After our supreme court denied the petitioner's application for permission to appeal, the petitioner timely filed a petition for post-conviction relief, arguing that he received the ineffective assistance of counsel at trial and on appeal. The post-conviction court appointed counsel, and counsel filed an amended petition.

At the evidentiary hearing, the petitioner testified that two different attorneys represented him at trial and on appeal. The petitioner had been charged with aggravated robbery and carjacking, but the cases were severed, and trial counsel was appointed to represent him in the aggravated robbery case. The petitioner said that trial counsel's representation "wasn't very good" and that counsel began discussing the aggravated robbery case with him in a thirty-minute meeting only three days before trial. The petitioner said that he was in pretrial custody, that he had about seven pretrial court appearances for this case, and that he saw trial counsel during about one-half of those court appearances for "[m]aybe ten minutes each time." He explained, "And we had numerous court dates set up where I would come over here and I would sit downstairs in the holding cell and not see nobody." He said that trial counsel first met with him in August 2004 and informed him that the State had offered to let him plead guilty in exchange for two nine-year sentences. Trial counsel

did not encourage the petitioner to accept the offer. The petitioner said that at their next meeting in November 2004, counsel told him that the offer was "off the table, and now the deal is thirty years." He said trial counsel also told him that he would be punished under the "three strike law" if he did not accept the offer. Later, the petitioner researched the law and learned it did not apply to him. He said that when the State made its first plea offer, he did not know he was considered to be a career offender. He said that if he had known he was a career offender, "I might have accepted those two nine year sentences." The petitioner met with counsel for a third time sometime in 2005, and the petitioner told counsel that he would agree to plead guilty as a Range II offender to a Class C felony in exchange for a six- to ten-year sentence. However, counsel told him the State would not agree to that offer.

The petitioner acknowledged that he robbed the victim but testified that he did not use a weapon. He said that his father and Edmond Wells lied at trial about his being with them at the time of the crime. He said that trial counsel should have objected on hearsay grounds when a detective testified about having a conversation with the petitioner's father and that counsel also failed to object when the State improperly elicited testimony from witnesses about obtaining the petitioner's license tag number. He said that without information about the tag number, he could not be placed at the scene of the crime. He said that the witnesses did not actually see him with a weapon during the robbery, that they gave different accounts as to whether he had a weapon, and that trial counsel did not point out inconsistencies in their testimony during closing argument. He said that his relationship with trial counsel was "terrible," that they argued and fought, and that counsel told him that "we wouldn't even be in this mess if [you weren't] such a fuckup." At first, the petitioner claimed that he and counsel did not discuss trial strategy until their thirty-minute meeting three days before trial. However, when the post-conviction court asked him how trial counsel knew to file a notice of alibi ten days before trial, the petitioner said, "Well, we -- might have talked about it some. But not to any great length."

Regarding appellate counsel, the petitioner testified that he and appellate counsel talked one time and wrote several letters "back and forth." The petitioner said that he told appellate counsel to concentrate solely on whether the petitioner had a gun during the robbery but that counsel only "[v]aguely" raised the issue on appeal. He said that if appellate counsel had raised the issue properly, then this court would have modified his aggravated robbery conviction to simple robbery.

On cross-examination, the petitioner acknowledged that he had nine prior aggravated robbery convictions and one prior conviction for second degree murder. He said that he did not know if the State's first plea offer involved concurrent or consecutive nine-year sentences. He said that he had wanted trial counsel to file a pretrial motion to exclude hearsay from the trial and that he did not know if counsel filed the motion. He acknowledged

that trial counsel hired an investigator but said that he did not know what the investigator did in this case. He said that the investigator was present during his three-hour meeting with trial counsel and that he talked with trial counsel about an alibi two weeks before trial.

Trial counsel testified for the State that he had been licensed to practice law for almost eleven years, that ninety-five percent of his practice involved criminal law, and that he had participated in five or six jury trials at the time of the petitioner's trial. Trial counsel said that he filed "all the appropriate motions," including a notice of alibi, and he acknowledged that he filed a motion for discovery, a motion for severance, and eight motions in limine. Due to the seriousness of the charge and the petitioner's being a career offender, counsel requested funds for an investigator. The trial court approved the request, and trial counsel hired Pat Wells. Investigator Wells visited the scene of the crime, interviewed witnesses, and met with the petitioner several times. Trial counsel said that he spoke with the petitioner five or six times outside of court and that he did not know how many times Wells talked with the petitioner. He said that for one of the petitioner's court dates, the petitioner "had already been sent back" by the time trial counsel arrived and that he did not get to speak with the petitioner that one time. He said that he was sure he talked with the petitioner about the petitioner's criminal history but that he did not remember talking with the petitioner about the three strikes law. He said that he told the petitioner it would be in the petitioner's best interest to accept the State's first plea offer and that if "you dilly dally around, then that offer's off the table." He said that the defense's strategy involved the witnesses' identification of the petitioner as the robber and that he would not have offered the alibi testimony if he had known it was perjured. Regarding Haley's testimony about the petitioner's license tag number, trial counsel moved for a mistrial, but the trial court denied the motion.

On cross-examination, trial counsel testified that he spoke with one of the alibi witnesses, that the witness was "a self-professed town drunk," and that he did not want to call the witnesses at trial. However, the petitioner threatened to tell the trial court that counsel was not doing his job, so counsel put the witness on the stand. Regarding the State's first plea offer, the State gave the petitioner thirty days to accept it. Trial counsel encouraged the petitioner to accept the offer, but the petitioner rejected it. Trial counsel said he did not remember telling the petitioner that the State's offer was off the table, that the new offer was thirty years, or that the trial court could sentence the petitioner to life in prison. Trial counsel said that he introduced Pat Wells to the petitioner, that Wells told counsel Wells met with the petitioner additional times, and that counsel had no reason to disbelieve Wells. Trial counsel said he objected to Haley's testimony about the petitioner's license tag number and requested a mistrial. He said that if he failed to object to other testimony about the petitioner's tag number, it was because he did not believe the testimony was prejudicial. Counsel said that he "hope[d]" he pointed out discrepancies in the witnesses' testimony during closing

argument. He said that he did not "particularly have a problem with Mr. Foster, other than he tried to tell me what I needed to do in trial." Trial counsel said that after the hearing on the motion for new trial, he filed a motion to withdraw due to the "dissatisfaction of Mr. Foster with my performance and the fact that he was convicted." He said that he never referred to the petitioner as an "F-upper or whatever" and that the only disagreement he had with the petitioner was over the alibi witness.

Appellate counsel testified that he had been licensed to practice law almost thirteen years and that at least ninety-five percent of his practice involved criminal law. He was appointed to represent the petitioner on appeal and had handled nine or ten appellate cases previously. In addition to handling the petitioner's direct appeal for the aggravated robbery case, counsel also handled the disposition of the petitioner's carjacking case. He said that he had meetings with the petitioner about the carjacking case and that they also discussed the appeal for the aggravated robbery conviction during those meetings. He acknowledged that the petitioner wanted the use of a weapon to be raised on appeal. Counsel raised the issue in the appellate brief.

On cross-examination, appellate counsel testified that he met with the petitioner at least three or four times. He said that after he reviewed the trial transcripts, he thought the petitioner's weapon issue "had some viability" on appeal. Counsel acknowledged that although the petitioner felt very strongly about the issue, counsel addressed the issue briefly in the appellate brief. He explained, "As I researched it, there had been enough references during the trial to the weapon." Appellate counsel said that he raised the issue on appeal "[a]s strongly as I could without looking ridiculous."

The post-conviction court accredited trial counsel's testimony that he thoroughly investigated the case by meeting with the petitioner and witnesses and that he filed motions in limine. The post-conviction court stated that although Carleen Haley "blurted out about a license tag number on direct examination," no other witnesses mentioned that a tag number had been obtained. The post-conviction court noted that the petitioner allowed perjured testimony and stated that the petitioner "now asks the Court to believe him regarding issues that are contradicted by other proof; specifically, that the petitioner did not have a gun." The court found the petitioner's credibility to be "non-existent" and ruled that the petitioner failed to show he received the ineffective assistance of counsel. The court denied the petition for post-conviction relief.

## II. Analysis

On appeal, the petitioner contends that he received the ineffective assistance of trial counsel because counsel failed to meet and communicate with him adequately in preparation

for trial and failed to explain the "pros and cons" of accepting the State's first plea offer. He argues that he received the ineffective assistance of appellate counsel because he did not get to address the lack-of-a-weapon issue "as fully as he desired" on appeal. The State argues that the petitioner received the effective assistance of counsel. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an

insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Regarding the petitioner's claim that he received the ineffective assistance of counsel because trial counsel failed to meet and communicate with him adequately in preparation for trial and failed to discuss the "pros and cons" of accepting the State's plea offer, the post-conviction court specifically accredited trial counsel's testimony. Trial counsel testified that he hired an investigator and that the investigator visited the crime scene, interviewed witnesses, and met with the petitioner. Trial counsel filed numerous pretrial motions and a notice of alibi. The petitioner has failed to explain what more trial counsel should have done or how he was prejudiced by any deficiency.

We note that although the petitioner claimed at the evidentiary hearing that trial counsel's failure to object to witnesses' testifying about the petitioner's license tag number prejudiced his case, the post-conviction court reviewed the trial transcript during the hearing and read the portion of Haley's direct examination testimony in which she said she yelled for someone to write down the petitioner's license tag number.[1] According to this court's direct appeal opinion,

> During cross-examination, Haley volunteered that the people in the SUV had given her the license plate number of the robber's vehicle, which she had conveyed to the 9-1-1 dispatcher. Defense counsel then moved for a mistrial, which the trial court denied. The trial court did, however, issue a curative instruction to the jurors that there was "no tag number obtained" and they were to disregard Haley's testimony about the license tag number.

Foster, No. M2006-02724-CCA-R3-CD, 2008 Tenn. Crim. App. LEXIS 145, at *18. Although trial counsel did not object to Haley's direct examination testimony, the post-conviction court found that her merely stating she yelled for someone to record the tag number was not prejudicial. We agree with that conclusion.

Regarding the State's first plea offer, trial counsel testified that he told the petitioner about the offer, that the petitioner had thirty days to accept the offer, and that he told the

---

[1] The trial transcript has not been included in the appellate record, and the petitioner has not requested that this court take judicial notice of the record from his direct appeal. See State ex rel. Wilkerson v. Bomar, 376 S.W.2d 451, 453 (Tenn. 1964) (providing that this court may take judicial notice of a direct appeal record when reviewing a post-conviction court's denial of a petition for post-conviction relief).

petitioner not to "dilly dally" in accepting the offer. Counsel also testified that he was sure he talked with the petitioner about his criminal history, that he encouraged the petitioner to accept the offer, and that the petitioner rejected the offer. We note that the petitioner testified on direct examination that if he had known he was a career offender, he <u>might</u> have accepted the State's offer. The petitioner has failed to show that trial counsel rendered deficient performance in counsel's trial preparation and in discussing the State's plea offer with him or that he was prejudiced by any deficiency.

Finally, as to the petitioner's claim that he received the ineffective assistance of counsel because appellate counsel failed to raise on appeal adequately the lack of evidence regarding his use of a weapon during the crime, the post-conviction court found the petitioner had no credibility. Moreover, we note that according to the facts in this court's direct appeal opinion, the victim testified that the petitioner stuck a silver gun in her side and threatened to shoot her. Although Johnson and Haley did not see a gun, their testimony demonstrated that the petitioner at least used an object that reasonably led them to believe he had a gun. <u>See</u> Tenn. Code Ann. § 39-13-402(a)(1) (providing that aggravated robbery is robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon"). The petitioner has failed to explain what more appellate counsel should have argued on direct appeal regarding the issue. Also, given that all three of the eyewitnesses testified about the petitioner's use of a weapon during the robbery, the petitioner has failed to show any prejudice.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
NORMA McGEE OGLE, JUDGE